159 So. 500

. **HALL v. STATE.**
8 Div. 100.

Court of Appeals of Alabama.
Feb. 19, 1935.

William Stell, of Russellville, for appellant.

A. A. Carmichael, Atty. Gen., for the State.

BRICKEN, Presiding Judge.

This appellant, and one Jeff Harris, were indicted separately for murder in the first degree. The judgment entry discloses: "Before entering into the trial the defendants Freeman Hall and his attorney, and Jeff Harris and his attorney, and the Solicitor who represents the State, all agreed in open court that the case against Freeman Hall should be tried jointly, before one jury, with the case against Jeff Harris, who is also under indictment for murder in the first degree, and whose case is also set for trial on this day."

In accordance with the foregoing agreement, and by consent of the court, the two persons named as defendants aforesaid were jointly tried upon the indictments which charged that they unlawfully and with malice aforethought killed Jim Bob Skidmore by stabbing him with a knife; and in the second count by cutting him with a knife. The trial resulted in the conviction of the defendant, Jeff Harris, for the offense of murder in the

second degree. His punishment was fixed at imprisonment in the penitentiary for twenty years. This appellant was convicted for the offense of manslaughter in the first degree, and his punishment was fixed at imprisonment for the term of five years. From this judgment of conviction this appeal was taken by Freeman Hall.

The motion for a new trial is based upon five separate grounds, but each of said grounds is of the same import, to wit: That "the verdict of the jury convicting the defendant was contrary to the evidence in the case." This motion was properly presented and exception duly reserved to the action of the court in overruling said motion.

Under the conflicting evidence in this case the court properly refused the affirmative charges requested by this appellant. And for like reasons there was no error in overruling his motion for a new trial. To hold otherwise it would be necessary, in effect, for this court to declare that the trial judge should have disregarded or refused to consider the evidence offered by the state. The court had no such authority, as he very properly held. The evidence for the state tended to show that Jim Bob Skidmore was killed on the occasion in question, and that his death resulted from a stab or cut with a knife inflicted upon him by the defendant Jeff Harris; and, further, that the defendant Freeman Hall participated in the fight and struck the deceased a severe blow upon his head with a pistol, and otherwise aided, abetted, or encouraged Harris in taking the life of the deceased.

The record in this case is voluminous and contains more than 100 pages. Pending the trial, innumerable exceptions were reserved to the court's rulings upon the admission of evidence. A discussion as to each of these exceptions is not necessary and will not be indulged; it being apparent that many of the exceptions are wholly without merit.

Appellant insists the court erred in overruling his objection to the question propounded to state witness Effie Skidmore by the solicitor, to wit: "Did he or not, at the time you are talking about going up to your brother's say what he was going up there for?" She answered: "He just said he was going up there to settle with him." The "He" referred to was the deceased, and the statement was made to his wife. The court properly held this testimony legal. From the time of this conversation until the fatal difficulty, it was a continuous transaction which led up to the killing. Clearly the testimony thus

sought tended to shed light upon the question why his wife (witness) sent their young son to the neighbor's house for assistance, and also tended to rebut and refute the insistence of the defendant that she sent her young son for assistance in keeping her husband from killing her. The case of Brewer v. State, 23 Ala. App. 116, 121 So. 689, cited by appellant in support of his insistence, is in no manner analogous to the situation here, as shown by the record. The matter under inquiry in this connection was in dispute, and the jury were entitled to any evidence tending to shed light on the entire transaction which resulted in the commission of the crime complained of.

■■ After several witnesses had been examined by the state, Earl Skidmore (young son of deceased) was offered as a witness, and the defendant made request of the court "to qualify this little boy." The court proceeded to do so, and after a rather lengthy voir dire, stated, "I will allow you to examine this witness." As to this ruling the defendant reserved an exception, and insists here that the ruling was error. The general rule prevails, that persons who have no comprehension of the nature and obligation of an oath, and are incapable of knowing and appreciating their responsibility for its violation, should not be allowed to testify as witnesses; and this without regard to the cause from which such defect has arisen; and hence without reference to the age of the witness. In passing upon the capacity of children of tender years to testify, necessarily much must be left to the sound discretion of the trial court, and unless it clearly appears that the trial court was in error the ruling will not be disturbed. After a careful examination of this question we are of the opinion that the voir dire examination of this witness sufficiently disclosed and demonstrated his competency, and the court committed no error in permitting him to testify.

■ The next question relates to the testimony of witness Lem Sparks who testified he was a deputy sheriff at that time, and that he went out to the place of killing a short time after it occurred and saw the deceased lying on the ground dead. He described how the body was, with deceased's feet sticking out of the door of the garage where he was killed and before the body had been moved into his house. Whereupon, he was asked: "Where the man's head was lying there, was there anything standing up around his head that he could have struck on as he fell?" The witness answered: "No sir it was clear around there." This was clearly competent.

The state had the right to show the locus in quo, and we find no error in any of the several rulings of the court in this connection.

■ On cross-examination of defendant's witness Jim Page, who had testified to the general good character of this appellant, the solicitor was permitted to ask the witness, among other things, "Don't you know that some time prior to March 2, 1933 (the date of the killing), that you had heard that some time prior to March 2, 1933 he was up here around Crooked Oak, or Frankfort, making whiskey with Jeff Harris?" The witness answered, "I don't know nothing about it." There was no injury to appellant in this connection; the answer of the witness being negative. Moreover, the solicitor had a right, on cross-examination, to inquire into the bona fides of the adverse witness' testimony, and also to show witness' conception of what he had termed the good character of the appellant.

The next exception insisted upon related in no way to appellant Freeman Hall, but had reference only to defendant Jeff Harris; hence the ruling of the court upon the testimony of defendant's witness Johnny Rikard need not be reviewed or discussed. It may be said, however, the question as propounded was unintelligible and otherwise objectionable.

The cross-examination of defendant's witness, Mrs. Pete Wagnon, in no manner exceeded the bounds of legitimate cross-examination of an adverse witness; therefore, no error is apparent in any of the court's rulings in this connection. The same applies as to the rulings of the court in connection with the cross-examination of defendant's witness, Mrs. Birdie Mae Harris, a sister-in-law of Jeff Harris.

The remaining exceptions in the case, as shown by the record, relate to rulings of the court on the admission of evidence. As is our duty, we have given careful and attentive consideration to each of these questions, and find no error which would warrant a reversal of the judgment of conviction from which this appeal was taken. As stated hereinabove, the question of the guilt of this appellant, under the conflicting evidence, was for the jury to determine. The trial judge delivered an exceptionally clear, able, full, and explicit charge to the jury covering practically fourteen pages of this transcript. No exceptions were reserved to this charge. To prolong this opinion appears unnecessary. It appears to us, and we are of the opinion, that

throughout the trial of this case the accused was given a fair and impartial trial such as the law contemplates and provides. Every substantial right of the accused was safeguarded by the fair and impartial rulings of the court. The record is regular and without error. The judgment of conviction from which this appeal was taken will stand affirmed.

Affirmed.